**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>BROOK VILLAGE ASSOCIATES LIMITED PARTNERSHIP, and<br><br>CENTERDALE MANOR ASSOCIATES<br><br>Defendants. | ) | No. 05-195S<br><br>Oral Argument Requested |

## EMHART INDUSTRIES, INC.'S MOTION TO INTERVENE

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, Emhart Industries, Inc. ("Emhart") through undersigned counsel, respectfully moves this Court to allow Emhart to intervene in this matter. The grounds for this motion are set forth in the accompanying memorandum, which is incorporated herein.

Respectfully submitted,
EMHART INDUSTRIES, INC.

By Its Attorneys,

Craig M. Scott (by reg)

Craig M. Scott, Esq. (#4237)
DUFFY SWEENEY & SCOTT, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (Facsimile)

Of Counsel:

Warren Anthony Fitch, Esq.
Jerome C. Muys, Jr., Esq.
L. Misha Preheim, Esq.
SWIDLER BERLIN LLP
3000 K Street, NW, Suite 300
Washington, DC 20007
(202) 424-7500
(202) 295-8478 (Facsimile)

**CERTIFICATE OF SERVICE**

TO:

Henry S. Friedman, Esq.
Senior Attorney
Environmental Enforcement Section
Environmental and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Henry.Friedman@usdoj.gov

Eve Vaudo, Esq.
Enforcement Counsel
U.S. Environmental Protection Agency
New England Region
One Congress Street
Suite 1100 (SES)
Boston, MA 02114-2023
vaudo.eve@epamail.epa.gov

Laurie Burt, Esq.
Foley Hoag
Seaport World Trade Center
155 Seaport Blvd.
Boston, MA 02210-2600
lburt@foleyhoag.com

Richard J. Welch
Moses Afonso & Jackvony
170 Westminster Street, Suite 201
Providence, RI 02903
rwelch@mosesafonso.com

William S. Eggeling
Ropes & Gray LLP
30 Kennedy Plaza
Providence, RI 02903
William.Eggeling@ropesgray.com

Howard J. Castleman, Esq.
Brown Rudnick Berlack Israels LLP
One Financial Center
Boston, MA 02111
Hcastleman@brownrudnick.com

Michael Milito, Esq.
Rhode Island Housing and Mortgage Finance Corporation
44 Washington Street
Providence, RI 02903
mmilito@rihousing.com

Brian Wagner, Esq.
Rhode Island Department of Environmental Management
235 Promenade Street
Providence, RI 02908-5767
brian.wagner@dem.ri.gov

Terrence Tierney
Assistant Attorney General
RI Department of the Attorney General
150 North Main Street
Providence, RI 02903
Ttierney@riag.ri.gov

James P. Ray
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
jray@rc.com

I certify that on the 22nd of February 2006, I caused a true copy of the within Motion to Intervene and Memorandum in Support, to be forwarded to the above listed parties by electronic and First Class Mail.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-195S |
| | ) | |
| BROOK VILLAGE ASSOCIATES LIMITED PARTNERSHIP, and | ) | |
| | ) | Oral Argument Requested |
| CENTERDALE MANOR ASSOCIATES | ) | |
| | ) | |
| Defendants. | ) | |

**EMHART INDUSTRIES, INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO INTERVENE**

Emhart Industries, Inc. ("Emhart"), by counsel, respectfully submits this memorandum in support of its motion to intervene. As set forth herein, Emhart meets the requirements of intervention of right under Rule 24(a) of the Federal Rules of Civil Procedure, and of permissive intervention under Rule 24(b) and 42 U.S.C. §9613(f), because Emhart's application is timely; because there will be no prejudice to the parties in the lawsuit if the application is granted since the case has effectively been stayed since it was initially filed; because Emhart will suffer severe prejudice if the application is denied; and because Emhart's interests are not adequately represented by any of the current parties.

**FACTUAL AND PROCEDURAL HISTORY**

The United States Environmental Protection Agency ("EPA") notified Emhart in March 2000 of its potential liability under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, for environmental contamination at the Centredale Manor Restoration Project Superfund Site ("the Site") in North Providence, Rhode Island, as the alleged successor to a chemical manufacturing facility at the Site. Emhart has been

issued, and has substantially complied with, two Unilateral Administrative Orders and one Administrative Order on Consent issued by EPA pursuant to CERCLA § 106, 42 U.S.C. § 9606, and other authorities, asserting that Emhart is a responsible party at the Site under CERCLA § 107, 42 U.S.C. § 9607, and requiring Emhart to conduct "removal" (preliminary cleanup) activities at the Site.

Emhart has incurred substantial costs in connection with these removal activities and has continued to incur costs in connection with the Site.[1] Total costs associated with the Site may approach $40 million. Under CERCLA §§ 107 and 113, 42 U.S.C. §§ 9607 and 9613, Emhart is entitled to contribution toward these costs from other responsible parties, including the defendants in this action.[2]

EPA commenced this action against defendants Brook Village Associates Limited Partnership ("Brook Village") and Centerdale Manor Associates ("Centerdale Manor") with the filing of its Complaint on May 6, 2005. Pursuant to CERCLA § 107, 42 U.S.C. § 9607, EPA seeks to recover costs that have been or will be incurred in connection with the release or

---

[1] In addition to the response costs incurred directly by Emhart, which currently exceed $1 million, EPA has demanded payment from Emhart and others of sums in excess of $14.5 million in unreimbursed response costs that it allegedly has incurred.

[2] Rule 24(c) provides that a motion to intervene "shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought." Rule 7 provides that "[t]here shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served. No other pleading shall be allowed…." Accordingly, Emhart has attached hereto, as Exhibit 1, a Complaint setting forth Emhart's claims against the defendants, claims which would be precluded if the proposed consent decrees are approved and entered.

threatened release of hazardous substances at or from the Site.[3]

Concurrent with the filing of the Complaint, the United States also filed a Notice of Lodging Consent Decree and, on the same date, lodged with the Court proposed consent decrees with each of the two defendants. The case has been inactive since that time – no scheduling order has been entered, and no substantive proceedings have occurred. On July 13, 2005, the Court granted EPA's and the defendants' joint motion seeking an extension of the time for the defendants to answer the complaint until twenty days after the Court has ruled upon an eventual motion by EPA seeking entry of the proposed consent decrees.

Under 42 U.S.C. 122(i)(2), the lodging of the proposed consent decrees commenced a public comment period. On June 27, 2005, Emhart timely submitted comments to EPA objecting to the consent decrees and, on October 4, 2005, submitted supplemental comments addressing recent relevant developments.

The proposed consent decrees would release the defendants from all governmental claims for response costs and natural resource damages that have been or will be incurred at the Site, and would provide contribution protection not only to the defendants, but also to their current and former general and limited partners, and their officers and directors, among others. In its comments submitted on the proposed consent decrees, Emhart contended, *inter alia*, that the settlement is premature; that EPA failed to follow its own guidance in reaching the settlement, most notably, in failing to consider the finances of the general partners behind the defendants; and that the settlement is inequitable.

On February 9, 2006, the United States filed a motion to enter the proposed consent

---

[3] Emhart has filed in this Court a related action, Emhart Industries, Inc. v. Bernard V. Buonanno, Sr. and Estate of Joseph Buonanno, Sr., No. 04-0058ML (D.R.I.), seeking contribution from other potentially responsible parties toward the cost of cleaning up the Site.

decrees, a supporting memorandum, and a document entitled "U.S. Environmental Protection Agency's Response to Comments on Proposed Consent Decrees, February 2006" ("Response to Comments"). In its Response to Comments, EPA rejected Emhart's comments and objections, and EPA now seeks, through its motion, entry of the proposed consent decrees. Consequently, Emhart must at this time request leave to intervene in this action in order to seek from this Court the relief which EPA has denied by its February 9, 2006 filings.[4]

## ARGUMENT

### A. <u>Emhart is Entitled to Intervene as a Matter of Right</u>

Rule 24(a) of the Federal Rules of Civil Procedure provides:

> (a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Under this Rule, the applicant for intervention must satisfy four criteria:

[4] The Court's docket entry number 12, reflecting the filing of the motion to enter consent decrees, also sets February 27, 2006 as the due date for responses to the motion. Because, as reflected by Emhart's motion to intervene, Emhart is not a party to this action, it cannot submit an opposition to the motion until and unless the Court grants Emhart's motion. Emhart respectfully draws the Court's attention to its comments on the proposed consent decrees, as submitted to EPA, which are attached as Appendix 1 to EPA's Responsiveness Summary and to the United States' motion as Exhibit 1. If Emhart is allowed to participate in this action, Emhart anticipates that its response to the motion would include and expand upon the points made in its June 27, 2005 and October 4, 2005 Comments to EPA. In addition, Emhart expects to review and comment upon the financial analysis submitted by EPA's purported expert regarding the alleged cash flow and asset availability of the defendants. Such comments in this regard were not included in Emhart's submissions to EPA because EPA rejected Emhart's request for access to the underlying financial data, as reflected in the Declaration of Jerome C. Muys, Jr., which is attached hereto as <u>Exhibit 2</u>. Pursuant to the Court's future directives regarding discovery and other proceedings, which should provide Emhart with the previously denied access to the underlying data, Emhart will file appropriate papers comprehensively setting forth all of Emhart's objections to the entry of the consent decrees.

> 1. The application must be timely . . .; 2. The applicant must claim an interest relating to the property or transaction which is the subject of the action; 3. Disposition of the action may, as a practical matter, impair or impede that applicant's ability to protect the interest; and 4. The applicant must show that the interest will not be adequately represented by existing parties.

Conservation Law Foundation of New England, Inc. v. Mosbacher, 966 F.2d 39, 41 (1st Cir. 1992). Each of these criteria is discussed below.

### 1. Emhart's Application is Timely

The timeliness inquiry involves the consideration of four factors:

> 1) the length of time the applicants knew, or reasonably should have known, of their interest before they petitioned to intervene; 2) the prejudice to existing parties due to the applicant['s] failure to petition for intervention promptly; 3) the prejudice that applicants would suffer if they were not allowed to intervene; and 4) unusual circumstances militating for or against intervention.

Acushnet River & New Bedford Harbor: Proceedings Re Alleged PCB Pollution, 712 F. Supp. 1019, 1023 n.4 (D. Mass. 1989), citing Garrity v. Gallen, 697 F.2d 452, 455 (1st Cir. 1983) and Culbreath v. Dukakis, 630 F.2d 15, 20-24 (1st Cir. 1980).[5]

Emhart was notified on February 7, 2006 that the United States would move this Court to enter the consent decrees, thereby rejecting the objections to the decrees which Emhart set forth in its comments. Emhart has filed its motion to intervene 10 working days later. It cannot be said that this expeditious response by Emhart is untimely, given that Courts in this Circuit, including the Court of Appeals, have allowed intervention at much later stages in litigation. See

[5] While sections 24(a) and (b) both have timeliness requirements, "the standards of timeliness for a Rule 24(a) motion are less strict than for a Rule 24(b) motion because greater interests are at stake in the former case." Fiandaca v. Cunningham, 827 F.2d 825, 833 (1st Cir. 1987). "Since in situations in which intervention is of right the would-be intervenor may be seriously harmed if he is not permitted to intervene, courts should be reluctant to dismiss a request for intervention as untimely, even though they might deny the request if the intervention were merely permissive." 7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1916 (2d ed. 1986).

Fiandaca v. Cunningham, 827 F.2d 825 (1st Cir. 1987) (holding that the district court abused its discretion in denying a post-trial motion to intervene in the relief phase of the litigation); Acushnet River & New Bedford Harbor: Proceedings Re Alleged PCB Pollution, 712 F. Supp. 1019, 1023 (D. Mass. 1989) (holding that motion to intervene brought three years after suit was filed was timely).

Emhart also had good reason to wait until now to file this motion. It promptly submitted extensive comments to the Government with respect to the proposed consent decrees. The case was effectively stayed by the Court's Order granting the parties' joint request that the filing of answers be deferred while the Government ostensibly considered those comments in deciding whether to move for entry of the consent decrees and while the Court then ruled upon the motion to enter. Emhart believed, in good faith, that the Government would revise the consent decrees to address Emhart's comments; proceeding otherwise requires a view that the public comment process is a sham. Once the Government revealed on February 7 that it would not revise the proposed consent decrees, Emhart promptly filed its motion to intervene. Expecting Emhart to file its motion prior to the Government's final decision on the Comments would have forced Emhart, the other parties, and the Court to expend significant resources litigating an issue that might not need to be litigated.[6] Significantly, as discussed *supra* note 4, EPA refused to provide Emhart with access to critical information -- *viz*, the underlying financial data upon which EPA's purported expert based her analysis of the defendants' ability to pay. Without that data, Emhart

---

[6] *But see* U.S. v. Pitney Bowes, Inc., 25 F.3d 66 (2d Cir. 1993), where the United States Court of Appeals for the Second Circuit held that a intervenor's motion was untimely where it waited until after a motion to approve the consent decree was filed. Emhart respectfully submits that this decision is inapposite to the case at hand. For example, in that case, one of the settling defendants had already commenced remedial work under the consent decree, and the agreed upon response was one EPA had devoted substantial time and money to design. None of those facts are true here.

has not yet had any opportunity to assess the reasonableness *vel non* of the financial terms of the proposed consent decrees.

Furthermore, there is no prejudice to the other parties. No discovery has taken place and the defendants have not even filed an answer. There has been no substantive activity in the case since the filing of the Complaint; the case has effectively been stayed since that time. Nor is the settlement proposed in the consent decrees the product of negotiations during the course of the litigation; the proposed consent decrees were filed together with the complaint and had been agreed to before the case was ever filed.

Emhart, however, will suffer severe prejudice if it is not allowed to intervene. Instead of being able to pursue its claims against the defendants, the consent decrees will preclude those claims, leaving Emhart to pay for more than its fair share of clean up costs.

For all these reasons, Emhart's application to intervene is timely.

**2. Emhart has a Cognizable Interest in the Property or Transaction**

There can be no doubt that Emhart has a cognizable interest in the property or transaction which is the subject of the action because the consent decrees, if entered, would preclude Emhart from seeking contribution from the defendants, their general partners, and others. "The threat of cutting off contribution rights of non-settling PRPs creates a direct and immediate interest on the part of non-settling PRPs in the subject matter of the present litigation." U.S. v. Union Elec. Co., 64 F.3d 1152 (8th Cir. 1995).

**3. Emhart Would Suffer Prejudice if it Were not Allowed to Intervene**

For the same reason, disposition of the action – namely, the entry of the proposed consent decrees – would impair (in fact, destroy) Emhart's ability to protect its contribution rights. Id. ("CERCLA § 113(f)(2) expressly states that the contribution rights of non-settling parties are

impaired as to settling parties").

4. **Emhart's Interests Will Not be Adequately Represented by Existing Parties**

The only other question is whether Emhart's interests are adequately represented by existing parties – namely, the United States Government. Emhart's burden with respect to this factor is minimal, and even a cursory review of the facts of the case make clear that the government has failed to represent Emhart's interests.[7]

Here, Emhart believes that the monetary amounts which the Government has obtained through the settlements embodied in the proposed consent decrees are far below what they should be.[8] This divergence of viewpoints with respect to the settlement amount may reflect the fact that because CERCLA is a strict liability statute, the Government will not be left with responsibility for those clean-up costs not covered by the consent decrees – Emhart (and other remaining potentially responsible parties) will. Simply put, the Government has the luxury of entering into the proposed consent decrees with the defendants because it believes that it can turn to Emhart and others to make up any shortfall between the inadequate and indefensible monetary amounts called for in the consent decrees and the actual clean-up costs. Because the consent decrees would release the defendants and others from all liability in connection with the Site,

---

[7] Under Rule 24(a)(2) the intervenor bears the burden of showing that its interest is not adequately represented, while under CERCLA § 113(i), the government bears that burden. Even if CERCLA's burden shifting is not reached, the burden of the moving party under Rule 24(a)(2) is minimal. Trbovich v. United Mine Workers, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972) ("Although an applicant for intervention as of right bears the burden of showing inadequate representation, that burden is the 'minimal' one of showing that representation 'may' be inadequate.").

[8] And, as noted above, if its motion to intervene is granted, Emhart will seek discovery into this issue, particularly with respect to the conclusions of the Government's purported financial expert. Emhart expects to utilize its own expert to consider, for example, the Government's apparent failure to take into account the actual financial wherewithal of the defendants and of the general partners of the defendants when crafting the consent decrees.

Emhart would not be able to seek from them their appropriate share of the response costs.

Courts in this Circuit recognize that an intervenor's interests are not adequately represented in precisely this scenario -- where the intervenor seeks a different measure of damages than every other party in the case. See Acushnet River & New Bedford Harbor: Proceedings Re Alleged PCB Pollution, 712 F. Supp. 1019, 1023 (D. Mass. 1989) (holding that the differences in the measure of damages sought by the sovereigns as opposed to the movant are substantial and therefore the movant's interests are not adequately represented).

In a case directly on point, the Court of Appeals reversed a District Court's holding that a regulated group did not have a sufficient interest to intervene as of right in a suit filed by public interest organizations seeking more extensive regulation by a federal agency. Conservation Law Foundation of New England, Inc. v. Mosbacher, 966 F.2d 39 (1st Cir. 1992). The agency had submitted a consent decree to which the intervenor objected because it would subject the group to more stringent rules than those in effect at the time. The Court of Appeals held that the District Court abused its discretion in holding that the regulated entity was adequately represented by the Government.[9] The Court explained that "[t]he Secretary's judgments are necessarily constrained by his view of the public welfare. While the Secretary may well believe that what best serves the public welfare will also best serve the overall interests of fishermen, the fact remains that the fishermen may see their own interest in a different, perhaps more parochial light." Id. at 44.

Moreover, the Mosbacher Court recognized that "a governmental entity charged by law with representing the public interest of its citizens might shirk its duty were it to advance the

[9] The Court explained that "[t]he question before us is not the merits of the consent decree, but whether the fishing groups should have been allowed to intervene in order to adequately present their opposition to it. (citations omitted)." Id.

narrower interest of a private entity." The Court noted that there are instances where "an agency seeking to protect both the public interest and the interest of a private intervenor undertakes a 'task which is on its face impossible.'" The case at hand is one such instance. In its memorandum in support of its motion to enter consent decrees, the Government asserts that "the settlements further other public interest concerns by requiring that the housing projects continue to operate as low-income subsidized housing, preserving low-income housing stock in Rhode Island and thereby preventing the displacement of several hundred elderly residents." Memorandum, at 16. More troubling is the fact that the Government refused to consider the income and assets of the defendants' general partners because of the unsubstantiated speculation that doing so would supposedly "negatively affect Rhode Island Housing's and other similar agencies' ability to attract necessary sponsors." While the Government's concern over Rhode Island's public housing stock may be laudable, addressing those speculative concerns has come at Emhart's expense – a clear indication that Emhart's interest are not represented.[10]

In another case directly on point, the United States Court of Appeals for the Eighth Circuit held that the United States Government cannot adequately represent the interests of non-settling potentially responsible parties:

> Here, the interests of the prospective intervenors cannot be subsumed within the shared interest of the citizens of the United States. The interests of the prospective intervenors are narrower and not subsumed by the general interest of the United States in providing for the clean up of polluted sites. Because of this difference in interests, the EPA can hardly be expected to litigate with the interests of the non-settling PRPs uppermost in its mind. The prospective intervenors are seeking to protect a more "parochial" financial interest not shared by other citizens in not losing a right to seek contribution from other PRPs and in not being subjected to excessive liability for the clean up.... The EPA would be shirking its duty were it to advance this narrower interest at the expense of

[10] And while the Government portrays the defendants as innocent landowners, Emhart expects to adduce evidence that their development activities exacerbated conditions at the Site.

> its representation of the general public interest. There is no existing party to this litigation who can adequately represent the identified interests of the applicants for intervention.

U.S. v. Union Elec. Co., 64 F.3d 1152, 1170 (8th Cir. 1995).

In short, Emhart's interests in this matter are plainly not adequately represented by the United States. For all the foregoing reasons, Emhart is entitled to intervene in this action as of right.

**B. In the Alternative, the Court Should Permit Emhart to Intervene Under Rule 24(b)**

Rule 24(b) provides:

> (b) Permissive Intervention. Upon timely application, anyone may be permitted to intervene in an action:
>
> > (1) when a statute of the United States confers a conditional right to intervene; or
> >
> > (2) when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication or the rights of the original parties.

Whether to grant permissive intervention is a matter left largely to the discretion of the district court. Acushnet River & New Bedford Harbor: Proceedings Re Alleged PCB Pollution, 712 F. Supp. 1019 (D. Mass. 1989), citing United States Postal System v. Brennan, 579 F.2d 188, 191-92 (2d Cir. 1978); 7C C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, § 1923 at 512-14 (2d ed. 1986).

**1. CERCLA Provides a Conditional Right to Intervene and Emhart's Claims Involve Questions of Fact and Law in Common with the Pending Matter.**

While Emhart need only meet one of two elements under Rule 24(b), it can meet both. First, CERCLA provides a conditional right to intervene.

> In any action commenced under this chapter or under the Solid Waste

> Disposal Act [42 U.S.C.A. § 6901 et seq.] in a court of the United States, any person may intervene as a matter of right when such person claims an interest relating to the subject of the action and is so situated that the disposition of the action may, as a practical matter, impair or impede the person's ability to protect that interest, unless the President or the State shows that the person's interest is adequately represented by existing parties.

42 U.S.C. § 9613 (i).[11]

Emhart's claims also have questions of fact and law in common with the pending matter. Both the Government and Emhart seek contribution for costs incurred, and to be incurred, in connection with cleaning up the Site. Those claims largely have the same factual and legal basis.

**2. <u>Emhart's Application is Timely and the Additional Factors Weigh Heavily in Favor of Emhart's Motion.</u>**

Rule 24(b), like Rule 24(a), also requires that the application to intervene be timely. "In addition, under 24(b) several other factors are to be considered: the nature and extent of the intervenor's interest, whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties, whether the applicant will benefit by the intervention, whether the intervenor's interests are adequately represented by the other parties, and whether the intervenors will significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." <u>Acushnet River & New Bedford Harbor: Proceedings Re Alleged PCB Pollution</u>, 712 F. Supp. 1019 (D. Mass. 1989) (citations omitted).

Emhart has already established that its motion is timely; its interest in the litigation is significant; there will not be any undue delay or prejudice to the rights of the original parties if Emhart is permitted to intervene; Emhart will benefit by the intervention; and the United States

[11] The requirements for intervention under CERCLA are akin to those under Rule 24(a)(2). However, under Rule 24(a)(2) the intervenor bears the burden of showing that its interest is not adequately represented, while under CERCLA § 113(i), the government bears that burden.

does not adequately represent Emhart's interests.

With respect to the last factor, Emhart will make a significant contribution to the development of the facts and legal issues presented in the case. As the Acushnet River Court recognized:

> One further reason exists to allow intervention. Without intending any criticism of the sovereigns' advocacy, such intervention permits another voice and set of concerns to participate in the resolution of an extremely complex matter, both factually and legally-that necessarily is taking this Court and these parties into the heretofore largely uncharted waters of a relatively new statute. The further guidance of an additional entity, especially one with some expertise in the subject at hand, is therefore not lightly to be shunned.

Acushnet River & New Bedford Harbor: Proceedings Re Alleged PCB Pollution, 712 F. Supp. 1019, 1023 (D. Mass. 1989). The legal knowledge garnered by Emhart during the course of litigating a number of CERCLA cases, as well as the extensive factual knowledge developed with respect to the Site, would significantly contribute to the development of the facts and issues presented by the United States' motion.

For all these reasons, Emhart should be permitted to intervene in this action.

## CONCLUSION

For the foregoing reasons, the Court should grant Emhart's motion to intervene.

Respectfully submitted,
EMHART INDUSTRIES, INC.

By Its Attorneys,

Craig M. Scott (by PRJ)

Craig M. Scott, Esq. (#4237)
DUFFY SWEENEY & SCOTT, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (Facsimile)

Of Counsel:

Warren Anthony Fitch, Esq.
Jerome C. Muys, Jr., Esq.
L. Misha Preheim, Esq.
SWIDLER BERLIN LLP
3000 K Street, NW, Suite 300
Washington, DC 20007
(202) 424-7500
(202) 295-8478 (Facsimile)

**CERTIFICATE OF SERVICE**

TO:

Henry S. Friedman, Esq.
Senior Attorney
Environmental Enforcement Section
Environmental and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Henry.Friedman@usdoj.gov

Eve Vaudo, Esq.
Enforcement Counsel
U.S. Environmental Protection Agency
New England Region
One Congress Street
Suite 1100 (SES)
Boston, MA 02114-2023
vaudo.eve@epamail.epa.gov

Laurie Burt, Esq.
Foley Hoag
Seaport World Trade Center
155 Seaport Blvd.
Boston, MA 02210-2600
lburt@foleyhoag.com

Richard J. Welch
Moses Afonso & Jackvony
170 Westminster Street, Suite 201
Providence, RI 02903
rwelch@mosesafonso.com

William S. Eggeling
Ropes & Gray LLP
30 Kennedy Plaza
Providence, RI 02903
William.Eggeling@ropesgray.com

Howard J. Castleman, Esq.
Brown Rudnick Berlack Israels LLP
One Financial Center
Boston, MA 02111
Hcastleman@brownrudnick.com

Michael Milito, Esq.
Rhode Island Housing and Mortgage Finance Corporation
44 Washington Street
Providence, RI 02903
mmilito@rihousing.com

Brian Wagner, Esq.
Rhode Island Department of Environmental Management
235 Promenade Street
Providence, RI 02908-5767
brian.wagner@dem.ri.gov

Terrence Tierney
Assistant Attorney General
RI Department of the Attorney General
150 North Main Street
Providence, RI 02903
Ttierney@riag.ri.gov

James P. Ray
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
jray@rc.com

I certify that on the 22nd of February, 2006, I caused a true copy of the within Motion to Intervene and Memorandum in Support, to be forwarded to the above listed parties by electronic and First Class Mail.

[signature]



9276493v1